UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUN 2 3 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-357-GWU

REGINA ALLEN,            PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Allen

        Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

Allen

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Regina Allen, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of borderline intellectual functioning, a major depressive disorder, anxiety disorder, and degenerative conditions of the lumbar spine. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of "light" jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 26 years, ninth grade education, and work experience as a housekeeper, fast food worker, and waitress, could perform any jobs if he were

7

limited to only "occasional limited reading," and would require low stress work involving only simple, non-detailed tasks where co-worker and public contact was casual and infrequent, and where supervision was direct and nonconfrontational, and where changes in the workplace were infrequent and gradually introduced. (Tr. 372). The VE responded that the person could perform the plaintiff's past job as a housekeeper. (Id.). He also identified other jobs at the light level which the person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability, in part, due to low back pain. Although a one-time examination in 2002 by a physician retained by the state agency was described as "normal," as was a lumbosacral spine x-ray taken on that occasion (Tr. 246-8), his findings were in contrast to all other examiners.

One of the plaintiff's treating physicians, Dr. Kishore Jadhav, noted a decreased range of motion of the lumbosacral spine with pain and tenderness of the lumbosacral area. In addition, he reviewed a thoracic spine x-ray showing a 25 to 35 percent loss of height at the T9 level. (Tr. 229, 234). There were no motor, sensory,

8

Allen

or reflex deficits on his examination. (Tr. 232-4). He prescribed medications, but did not suggest any functional restrictions.

The plaintiff was also seen on two occasions by a neurosurgeon, Dr. Richard Lingreen, with complaints of head, neck, left arm, mid back, low back, and left leg pain. (Tr. 299). He found a normal range of motion of the thoracolumbar spine but did note tenderness, and positive straight leg raising bilaterally. (Id.). He reviewed an MRI scan showing a central herniation and diffuse bulging at the L5-S1 area. (Id.). The plaintiff declined his offer of epidural steroid injections, and was given Methadone instead. (Id.). The plaintiff made one more visit to Dr. Lingreen, who planned to obtain tests of the cervical spine and left hip, and changed her medications because of side effects from the Methadone. (Tr. 297). No functional restrictions are given.

The MRI showing the herniated disc was obtained by Dr. Howard Lefsky. (Tr. 236). Dr. Lefsky, a medical doctor, treated the plaintiff for several months at the Hyden Family Chiropractic Care Clinic. Office notes run from an initial examination on June 6, 2002 (Tr. 285) to September 18, 2002 (Tr. 251). She was apparently seen on a rotating basis by a chiropractor and by Dr. Lefsky. On June 28, 2002, Dr. Lefsky noted decreased deep tendon reflexes of the lower extremities, and decreased sensation to pinprick on the lateral left thigh and the entire left foot. (Tr. 272). It was at this point that the MRI showing the herniated disc was ordered.

(Id.).¹ Dr. Lefsky prepared a medical report on August 7, 2002 stating that the plaintiff's diagnoses were chronic cervicalgia and chronic lumbalgia, that she had had only moderate improvement with hot packs, elecrtical stimulation, and narcotic pain relievers, and that her prognosis was "poor." (Tr. 250). In describing his patient's ability to do work-related activities, Dr. Lefsky appears² to respond that her pain was worsened by standing five to ten minutes, riding one hour, and lifting 5 to 10 pounds. (Id.).

While this is not an absolutely conclusive statement of maximum work limits, it does appear to been overlooked by the ALJ, who referred to Dr. Lefsky in his decision only as a chiropractor. He also referred to the extensive medications prescribed by Dr. Lefsky, apparently without noting that a chiropractor is not licensed to prescribe medications such as Lortab, Norflex, Celexa, Xanax, Valium, and Prozac. (Tr. 18-19). Clearly, Dr. Lefsky was a *treating medical source* whose opinion must be evaluated before arriving at a functional capacity conclusion.

In addition, the plaintiff challenges the ALJ's mental restrictions on appeal. The ALJ noted that Dr. Jadhav had referred the plaintiff on one occasion for mental health counseling due to anxiety, panic disorder, and "anger management" issues

---

¹The patient was than referred to "Dr. Williams/neurosurgeon" (Tr. 270), although apparently due to scheduling conflicts she was eventually seen instead by Dr. Lingreen, a colleague of Dr. Williams (Tr. 260, 299).

²His handwriting is not entirely clear in the Court's photocopy.

10

(Tr. 233), but that no functional restrictions had been given. As previously mentioned, he noted prescriptions for psychotropic medications from Hyden Family Chiropractic. The plaintiff was evaluated on two occasions by a psychologist, Mr. James Leisenring, who found her to be malingering on his first examination (Tr. 291-5), but on his second examination Mr. Leisenring was able to obtain a valid full-scale IQ score of 74 and WRAT scores documenting a second grade reading ability, and also diagnosed major depression and an anxiety disorder, with a Global Assessment of Functioning (GAF) score of 50. (Tr. 303-5). A GAF score of 50 is in the range of "serious impairment in social, occupational, or school functioning." <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. Mr. Leisenring concluded that the plaintiff's functional illiteracy and borderline intellectual functioning would cause a moderate impairment in her ability to understand and carry out instructions, and that her marked depression with anxiety would result in "significant compromise" in her ability to respond to supervision, co-workers, and work pressures in a work setting. (Tr. 305).

A state agency psychologist who reviewed the record at this point opined that the plaintiff would be "moderately limited" only in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and "moderately limited" in her ability to interact appropriately with the general public. (Tr. 309-10). The ALJ accepted his conclusions because he felt they

Allen

were more consistent with the plaintiff's activities of daily living. (Tr. 17). Since the plaintiff stated at the administrative hearing, and to Mr. Leisenring (Tr. 302-3), that she primarily stayed home by herself and had crying spells, and had lost a significant amount of weight recently (Tr. 366), a fact borne out by Dr. Jadhav's office notes (Tr. 231-4), the plaintiff's daily activities are not an entirely convincing basis to overcome Mr. Leisenring's opinion and GAF score.

The decision will be remanded for further consideration.

This the  23  day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE